IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, § § § Plaintiff, § § Civil Action No. 3:15-CV-1475-D VS. § § PRIMELENDING, A PLAINSCAPITAL § COMPANY, et al., § § Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff-counterdefendant Atlantic Casualty Insurance Company ("Atlantic Casualty") moves under Fed. R. Civ. P. 12(b)(6) and 9(b) to dismiss defendant-counterplaintiff First Choice Construction, LLC's ("First Choice's") second amended counterclaims and third-party complaint. For the reasons that follow, the court grants the motion and also grants First Choice leave to replead.

I

Atlantic Casualty, an insurer, sues its insured, First Choice, a home remodeling contractor, and defendant PrimeLending, a Plainscapital Company ("PrimeLending"), seeking a declaratory judgment that Atlantic Casualty has no duty to defend or indemnify First Choice in a lawsuit pending in Texas state court, and for related relief. This case arises from an underlying lawsuit brought by PrimeLending against First Choice and other defendants. *See PrimeLending, a Plainscapital Co. v. First Choice Constr., LLC & Shelby*

*Brooks d/b/a The 203K Consulting Grp., Inc.*, No. 429-04043-2013 (429th Dist. Ct., Collin County, Tex.) (the "Underlying Suit"). In the Underlying Suit, PrimeLending alleges that it entered into a residential mortgage loan agreement with Deborah White ("White"), who entered into a contract with First Choice to renovate her residence. PrimeLending asserts that First Choice failed to complete the renovations in a timely and workmanlike manner, and conspired to defraud White and PrimeLending. PrimeLending alleges claims against First Choice for breach of contract and various torts.[1]

Atlantic Casualty insured First Choice under two commercial general liability policies (the "Policies"). When First Choice requested that Atlantic Casualty provide a defense in the Underlying Suit, Atlantic Casualty declined coverage, contending that the allegations in the Underlying Suit were not covered under the Policies. Atlantic Casualty then initiated the instant lawsuit against First Choice and PrimeLending.[2] First Choice filed its second amended counterclaims and third-party complaint, seeking relief from Connect Insurance Agency, Inc. ("Connect"), the seller of the Policies, as the third-party defendant. First Choice asserts claims against Connect for breach of the duty of good faith and fair dealing,[3] and for violations of the Texas Deceptive Trade Practices-Consumer Protection Act

---

[1]The court in the Underlying Suit granted First Choice's summary judgment motion dismissing all of PrimeLending's claims.

[2]According to the amended complaint, PrimeLending is only named as a defendant because it seeks relief in the Underlying Lawsuit from First Choice.

[3]First Choice's first cause of action is titled "Bad Faith," but it is apparent from the allegations that this claim is for breach of the duty of good faith and fair dealing.

("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011), and Chapters 541 and 981 of the Texas Insurance Code. Atlantic Casualty now moves under Rules 12(b)(6) and 9(b) to dismiss the counterclaims asserted against it in First Choice's second amended counterclaims and third-party complaint. First Choice opposes the motion.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the [party asserting the claims].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive Atlantic Casualty's motion, First Choice's second amended counterclaims and third-party complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [parties against whom the claim is brought] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [the party against whom the claim is brought] has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted)

(quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

Atlantic Casualty moves first to dismiss First Choice's counterclaim for breach of the duty of good faith and fair dealing, contending that Connect, as Atlantic Casualty's agent, did not owe this duty to First Choice, and that Atlantic Casualty did not owe this duty to First Choice in the third-party context.  In response, First Choice concedes that it does not have a viable claim for breach of the duty of good faith and fair dealing, and it seeks leave to amend its pleadings to omit this claim.  Accordingly, the court dismisses First Choice's counterclaim for breach of the duty of good faith and fair dealing.

IV

Atlantic Casualty moves next to dismiss First Choice's DTPA and Texas Insurance Code Chapter 541 counterclaims.

A

First Choice avers that Atlantic Casualty and Connect violated the DTPA by committing a false, misleading, or deceptive act or practice, in violation of DTPA § 17.46(b); a breach of express or implied warranty, in violation of DTPA § 17.50(a)(2); an

unconscionable act, in violation of DTPA § 17.50(a)(3); an act or practice in violation of Chapter 541 of the Texas Insurance Code, in violation of DTPA § 17.50(a)(4); and a violation of one of the "tie-in" consumer statutes, as authorized by DTPA § 17.50(h).  First Choice also alleges that Atlantic Casualty and Connect violated Chapter 541 of the Texas Insurance Code by failing to provide a prompt and reasonable explanation for the denial of First Choice's claim, in violation of Tex. Ins. Code Ann. § 541.060(a)(3); misrepresenting the benefits or advantages promised by the Policies, in violation of Tex. Ins. Code Ann. § 541.051(1)(B); making an untrue statement of material fact and failing to state a material fact so that other statements were rendered misleading, in violation of Tex. Ins. Code Ann. § 541.061; refusing to pay the claim without conducting a reasonable investigation of the claim, in violation of Tex. Ins. Code Ann. § 541.060(a)(7); and making a false, misleading, or deceptive act or practice in violation of the DTPA § 17.46(b), in violation of Tex. Ins. Code Ann. § 541.151(2).

B

Atlantic Casualty argues, *inter alia*, that First Choice has failed to plead its DTPA and Chapter 541 of the Texas Insurance Code counterclaims sounding in fraud with the specificity that Rule 9(b) requires, entitling Atlantic Casualty to dismissal under Rule 12(b)(6).

1

"'Claims alleging violations of the Texas Insurance Code and the DTPA . . . are subject to the requirements of Rule 9(b).'" *El Conejo Bus Lines, Inc. v. Metro. Life Ins. Co.*,

1999 WL 354237, at *2 (N.D. Tex. May 27, 1999) (Fitzwater, J.) (ellipsis in original) (quoting *Frith v. Guardian Life Ins. Co.*, 9 F.Supp.2d 734, 742 (S.D. Tex. 1998)); *see also Berry v. Indianapolis Life Ins. Co.*, 608 F.Supp.2d 785, 800 (N.D. Tex. 2009) (Boyle, J.) (dismissing plaintiffs' DTPA and Chapter 541 claims "predicated on the same misrepresentations and omissions as the fraud claim" for failure to satisfy Rule 9(b)).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724) (internal quotation marks omitted). More colloquially, First Choice must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Because Rule 9(b) must be "read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief," "punctilious pleading detail" is not required. *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.) (quoting *Landry v. Air Lines Pilots Ass'n Int'l AFL–CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990)) (internal quotation marks omitted). "The

court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs." *Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.) (quoting *FDIC v. Gaubert*, No. 3-90-1196-D, slip op. at 7 (N.D. Tex. Sept. 4, 1990) (Fitzwater, J.)).

2

First Choice does not dispute that many of its claims for violations of the DTPA and Chapter 541 of the Texas Insurance Code sound in fraud and are subject to Rule 9(b). First Choice contends instead that it has pleaded sufficient facts to establish that Atlantic Casualty and Connect misrepresented the terms and conditions of the Policies. First Choice alleges that Atlantic Casualty and Connect "either knowingly sold [First] Choice an illusory commercial general liability policy, or knowingly misrepresented Atlantic[] [Casualty's] policy as appropriate coverage for [First] Choice's remodeling business to induce the payment of the premium." 2d Am. Countercl. ¶ 48. First Choice also avers that Atlantic Casualty and Connect "engaged in an unconscionable action" because "[First] Choice sought a commercial general liability insurance policy for its remodeling business" and "Atlantic [Casualty] and Connect sold [First] Choice Policies identified as commercial general liability coverage policies," but "according to Atlantic [Casualty], [the Policies] d[id] not cover the obvious nature of [First] Choice's remodeling business." *Id.* at ¶ 51.[4] First Choice also

---

[4] First Choice's claim that Atlantic Casualty and Connect violated the DTPA through this unconscionable act is subject to the pleading requirements of Rule 9(b). *See, e.g.,*

asserts that Atlantic Casualty and Connect "misrepresent[ed] the benefits or advantages promised by its [Policies]" and "ma[de] an untrue statement of material fact and le[ft] out a material fact, so that other statements [were] rendered misleading." *Id.* at ¶ 55.

Although First Choice alleges that misrepresentations were made, it does not specify any of the other particulars that Rule 9(b) requires, such as when the representations were made, where the representations were made, or the specific identity of the person making the representations. First Choice does not even allege a general time period for when these representations allegedly occurred. These allegations are therefore insufficient of themselves to meet the specificity requirements of Rule 9(b). *See, e.g.*, *Stanissis v. Dyncorp Int'l LLC*, 2015 WL 1931417, at *6 (N.D. Tex. Apr. 29, 2015) (Fitzwater, J.) (holding that plaintiffs did not meet Rule 9(b) requirements where they alleged misrepresentations, but did not specify other particulars required by Rule 9(b), such as which defendants made representations, when representations were made, and in what context they were made); *Moore v. Town N. Auto, Inc.*, 2014 WL 3396100, at *4 (N.D. Tex. July 11, 2014) (Fitzwater, C.J.) (same); *cf. Benchmark Elecs.*, 343 F.3d at 724 (holding that plaintiff satisfied Rule 9(b) where it alleged specifically who made misrepresentations, when they made them, and what they said).

Accordingly, First Choice's DTPA and Texas Insurance Code counterclaims sounding

---

*Shakeri v. ADT Sec. Servs., Inc.*, 2014 WL 5780955, at *3 n.4 (N.D. Tex. Nov. 6, 2014) (Fitzwater, C.J.) ("Plaintiffs' claim that [defendant] violated the DTPA through its unconscionable acts including false advertising is subject to the pleading requirements of Rule 9(b).") (alteration and internal citation omitted) (citing cases), *aff'd in part, rev'd in part on other grounds*, ___ F.3d ___, 2016 WL 877136 (5th Cir. Mar. 7, 2016).

in fraud are dismissed.

C

Atlantic Casualty moves, *inter alia*, to dismiss First Choice's remaining counterclaims under the DTPA and Chapter 541 of the Texas Insurance Code on the ground that First Choice alleges only "legal conclusions or boilerplate, non-factual, recitations of statutory language." D. Br. 6. The court agrees. Other than conclusory allegations, First Choice fails to allege any facts supporting these remaining claims. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).

Accordingly, First Choice's remaining counterclaims under the DTPA and Texas Insurance Code Chapter 541 are dismissed.

V

Atlantic Casualty moves next to dismiss First Choice's counterclaim based on Chapter 981 of the Texas Insurance Code, contending that there is no private right of action for this claim. In response, First Choice merely cites *Howard v. Burlington Insurance Co.*, 347 S.W.3d 783 (Tex. App. 2011, no pet.), in which the court granted summary judgment in favor of the defendant on plaintiff's Chapter 981 claim based on the merits. But *Howard* did not explicitly consider whether the plaintiff had a private right of action under Chapter 981 before rejecting the claim on the merits, *see id.* at 798-99, nor was the court obligated to do so, *see, e.g., Air Courier Conference v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523 n.3 (1991) (citing *Burks v. Lasker*, 441 U.S. 471, 476 n.5 (1979)) ("Whether a cause of

action exists is not a question of jurisdiction, and may be assumed without being decided.").

Chapter 981 of the Texas Insurance Code governs surplus lines insurance. *See* Tex. Ins. Code Ann. § 981.001. "When a private cause of action is alleged to derive from a constitutional or statutory provision, our duty is to ascertain the drafters' intent." *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004) (citing *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 260 (Tex. 2002)). "We apply a 'strict rule of construction' to statutory enforcement schemes and imply causes of action only when the drafters' intent is clearly expressed from the language as written." *Witkowski v. Brian, Fooshee & Yonge Props.*, 181 S.W.3d 824, 831 (Tex. App. 2005, no pet.) (quoting *Brown*, 156 S.W.3d at 567). Chapter 981 provides that violations of the chapter may be punished with sanctions described under Chapter 82. *See* Tex. Ins. Code Ann. § 981.006. "Chapter 82 authorizes the commissioner of insurance to impose an administrative penalty, direct the insurer to make restitution to a harmed Texas resident, or cancel or suspend an insurer's authorization to issue insurance in Texas." *Chandler Mgmt. Corp. v. First Specialty Ins. Corp.*, 452 S.W.3d 887, 896 (Tex. App. 2014, no pet.) (citing Tex. Ins. Code Ann. §§ 82.051-.054 (West 2009)). And nothing in the language of Chapter 981 reflects any intent to create a private right of action. *See, e.g., Abatement Inc. v. Williams*, 324 S.W.3d 858, 864 (Tex. App. 2010, pet. denied) ("Chapter 61 provides a detailed administrative enforcement scheme and allows the possibility for enforcement by the attorney general," and "nothing in language of chapter 61 shows any intent to also allow a private right of action."); *see also Martin v. Clinical Pathology Labs., Inc.*, 343 S.W.3d 885, 894 (Tex. App. 2011, pet. denied) ("Nothing in §

276.004 reveals any intent to create a private cause of action.").

Moreover, another section of the Texas Insurance Code—Chapter 541—specifically provides for a private right of action. *See, e.g., Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 424-25 (Tex. 2011) (citing Tex. Ins. Code Ann. § 541.151) ("Unfair practices under Chapter 541 are subject to private civil suits."). The omission of such language from Chapter 981 therefore strongly suggests that the legislature did not intend to create a private right of action under Chapter 981. *See Abatement*, 324 S.W.3d at 864-65 (citing cases) (noting that "another portion of the Payday Law, chapter 62, specifically provides for a private cause of action for failure to pay minimum wages," and concluding that "[t]he legislature's express inclusion of a private right of action in chapter 62 and omission of that language in chapter 61 strongly suggests that the legislature did not intend a private right of action under chapter 61"); *see also Brown*, 156 S.W.3d at 568 (citing cases) ("Additionally, when the Legislature includes a right or remedy in one part of a code and omits it in another, that may be precisely what the Legislature intended."). The court therefore concludes that Chapter 981 does not provide a private right of action.

Accordingly, First Choice's counterclaim under Chapter 981 of the Texas Insurance Code is dismissed.

VI

Although the court is granting the motion to dismiss, it will permit First Choice to replead. "[D]istrict courts often afford [the party asserting a claim] at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are

incurable or the [party] advise[s] the court that [it is] unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (citation omitted).  Because First Choice has not stated that it cannot, or is unwilling to, cure the defects that the court has identified, the court grants First Choice 28 days from the date this memorandum opinion and order is filed to file its amended counterclaims and third-party complaint.

*  *  *

For the reasons explained, Atlantic Casualty's motion to dismiss is granted, and First Choice is granted leave to replead.

**SO ORDERED**.

April 5, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE