IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff-Counterdefendant, | § | |
| | § | Civil Action No. 3:15-CV-1475-D |
| VS. | § | |
| | § | |
| PRIMELENDING, A PLAINSCAPITAL COMPANY, | § | |
| | § | |
| Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| FIRST CHOICE CONSTRUCTION, LLC, | § | |
| | § | |
| Defendant-Counterplaintiff-Third-party Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| CONNECT INSURANCE AGENCY, INC., | § | |
| | § | |
| Third-party Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff-counterdefendant Atlantic Casualty Insurance Company ("Atlantic") seeking a declaratory judgment that it has no duty to defend or indemnify defendant-counterplaintiff-third-party plaintiff First Choice Construction, LLC ("First Choice") in an underlying state court lawsuit, Atlantic moves for summary judgment on its declaratory judgment action and on First Choice's counterclaims. Atlantic also moves under

Fed. R. Civ. P. 12(b)(6) and 9(b) to dismiss First Choice's third amended counterclaims. First Choice moves for partial summary judgment on its counterclaims against Atlantic. Third-party defendant Connect Insurance Agency, Inc. ("Connect") moves under Rules 12(b)(6) and 9(b) to dismiss First Choice's third-party action. For the reasons that follow, the court grants Atlantic's motion for summary judgment, denies Atlantic's motion to dismiss without prejudice as moot, denies First Choice's motion for partial summary judgment, and grants Connect's motion to dismiss. The court grants First Choice leave to replead its third-party action against Connect, and it enters a Rule 54(b) final judgment in favor of Atlantic against First Choice.

I

The court set out the relevant background facts in its previous memorandum opinion and order in this case. *Atl. Cas. Ins. Co. v. PrimeLending, A PlainsCapital Co.*, 2016 WL 1322235, at *1 (N.D. Tex. Apr. 5, 2016) (Fitzwater, J.) ("*Atlantic I*"). The court will therefore recount only the background facts and procedural history that are pertinent to this decision.

In 2012 First Choice, a remodeling company, purchased from Connect, an insurance agent, a commercial general liability ("CGL") policy issued by Atlantic ("the Policy"). The Policy imposed on Atlantic a duty to defend First Choice against lawsuits that met specified criteria and to indemnify First Choice. In November 2013 PrimeLending sued First Choice in Texas state court for claims based on allegedly shoddy remodeling work performed on Deborah White's ("White's") residence.

Atlantic filed the instant lawsuit seeking a declaratory judgment that it did not have a duty to defend First Choice in the underlying lawsuit or indemnify First Choice.[1] First Choice filed counterclaims against Atlantic and a third-party action against Connect alleging violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (West 2015), and the Texas Insurance Code ("Insurance Code"). The court dismissed First Choice's second amended counterclaims in *Atlantic I*, and granted First Choice leave to replead. *Atl. I*, 2016 WL 1322235, at *5. First Choice filed its third amended counterclaims ("amended counterclaims").

Atlantic now moves in separate motions to dismiss the amended counterclaims and for summary judgment on all claims and counterclaims between the two parties; Connect moves to dismiss First Choice's amended third-party action; and First Choice moves for partial summary judgment on its counterclaims against Atlantic.[2] The court denies Atlantic's motion to dismiss without prejudice as moot,[3] and it reaches the other motions on the merits.

---

[1]Atlantic originally sued PrimeLending, but it later dismissed all claims against PrimeLending by agreement.

[2]Atlantic objects and moves to strike First Choice's motion for partial summary judgment, contending that First Choice is raising new, unpleaded theories in its motion. Atlantic also objects and moves to strike the affidavit of William J. Brotherton, Esquire, ("Brotherton"), which First Choice offers in support of its counterclaim for attorney's fees. First Choice objects in its response to Atlantic's summary judgment motion, contending that Atlantic's evidence of a denial letter is unreliable. First Choice also moves for leave to file a surreply brief regarding Atlantic's motion to strike the Brotherton affidavit. Because First Choice's new theories, First Choice's attorney's fees evidence, and Atlantic's denial letter evidence do not affect the court's decision, the court denies these motions as moot.

[3]Because the court is granting Atlantic's motion for summary judgment, it denies Atlantic's motion to dismiss without prejudice as moot.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive Connect's motion to dismiss, First Choice must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level [.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U. S. at 555).

III

The court first considers Atlantic's claim for a declaratory judgment that PrimeLending's suit against First Choice did not trigger Atlantic's duty to defend or indemnify under the Policy.[4]

---

[4]An insurer can obtain a prejudgment declaration that it owes no duty to defend its insured in a pending lawsuit and can also obtain a declaration regarding the duty to indemnify "when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83-84 (Tex. 1997) (emphasis omitted). Accordingly, because the court holds that Atlantic has no duty to defend First Choice, and the same reasons that negate the duty to defend likewise negate any possibility that Atlantic will ever have a duty to indemnify First Choice, the court will limit its discussion to whether Atlantic has a duty to defend First Choice in the underlying lawsuit.

A

"Under Texas law, the insured bears the burden of establishing that the insurance policy covers the claim" and thus imposes on an insurer a duty to defend. *Star-Tex. Res., L.L.C. v. Granite State Ins. Co.*, 553 Fed. Appx. 366, 369 (5th Cir. 2014) (per curiam). Texas courts strictly follow the "eight corners rule" to determine whether a duty to defend exists, "meaning the duty to defend may only be determined by the facts alleged in the petition and the coverage provided in the policy." *Gilbane Bldg. Co. v. Admiral Ins. Co*, 664 F.3d 589, 596 (5th Cir. 2011) (citing *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009)). Under the eight corners rule, the facts alleged are considered "without regard to their truth or falsity[,] and all doubts regarding the duty to defend are resolved in the insured's favor." *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). The court must also consider "any reasonable inferences that flow from the facts alleged." *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 601 (5th Cir. 2006). Although courts must consider reasonable inferences, "[c]ourts may not[] . . . (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Star-Tex. Res.*, 553 Fed. Appx. at 370 (quoting *Guar. Nat'l Ins. Co. v. Azrock Indus.*, 211 F.3d 239, 243 (5th Cir. 2000)). Additionally, legal theories or conclusions proffered in the petition are irrelevant to the court's analysis. *Ewing Constr.*, 420 S.W.3d at 33.

The Supreme Court of Texas has not recognized an exception to the eight corners rule.

But the Fifth Circuit—making an *Erie*[5] guess—has recognized a narrow exception to the rule when the underlying petition does not allege enough facts for a court to determine how the suit affects coverage. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004).[6] In this situation, the court may consider extrinsic evidence to determine whether the duty to defend is triggered. *Id.*

Under the Policy, Atlantic has both "the right and duty to defend the insured against any suit seeking [property damages]" covered by the Policy. P. App. 22.[7] Relevant here, the Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it[.]" *Id.* at 34. Atlantic's duty to defend is only triggered if the property damage is caused by an "occurrence," defined by the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 22, 34.

B

Atlantic contends that PrimeLending did not allege in the underlying lawsuit any claims based on allegations of property damage caused by an occurrence. PrimeLending's

---

[5]*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[6]The Fifth Circuit later reaffirmed the existence of the exception after the Supreme Court of Texas approvingly cited *Northfield*. *See Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 475-76 (5th Cir. 2009).

[7]For ease of reference, unless otherwise noted, citations to filings refer to those regarding Atlantic's motion for summary judgment.

most recent petition[8]—its third amended petition—asserted claims against First Choice for breach of contract with PrimeLending, negligence, negligent misrepresentation, fraud/fraudulent misrepresentation, and breach of contract with White (with PrimeLending acting as assignee). The third amended petition alleged that White had contracted with First Choice for renovations and improvements to her home; the renovations were not completed in "a timely and workmanlike manner[;] . . . and Defendants breached the terms of [the contract] by performing poor construction work[.]" P. App. 178-79. PrimeLending did not specify in the third amended petition what made First Choice's construction work "poor." The third amended petition also alleged that First Choice had fraudulently requested payments from PrimeLending based on substandard work or work that was never done at all.

First Choice contends that it is reasonable to infer from these allegations that the allegedly substandard work caused physical injury to White's property, including the renovations themselves. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007) (holding that cracks in home's sheetrock and veneer caused by general contractor's defective workmanship were property damage). First Choice also maintains that, even if the face of the third amended petition does not contain enough facts to determine whether the duty to defend is triggered, the court can look to extrinsic evidence to determine whether property damage occurred.

Although it is theoretically conceivable to infer from the third amended petition that

---

[8]When multiple petitions have been filed, the court looks to the most recent amended pleading. *Northfield*, 363 F.3d at 528.

First Choice's allegedly substandard work caused physical injury to White's residence, including to the renovations themselves, there is a contrary reasonable inference that can be drawn: that PrimeLending was *not* seeking damages for physical injury to tangible property (i.e., property damage) caused by an accident, including continuous or repeated exposure to substantially the same general harmful conditions (i.e., an occurrence). Considering the nature of the claims and the facts alleged in the third amended petition, it is reasonable to infer that PrimeLending was only alleging that the construction work that First Choice performed in renovating and improving White's residence was of poor quality and was not completed in a timely manner, not that First Choice accidentally (or through continuous or repeated exposure to substantially the same general harmful conditions) caused damage to White's property. In fact, it is difficult to draw the reasonable inference that PrimeLending was alleging that First Choice damaged White's property through poor and untimely construction work caused by an "accident."

Even assuming *arguendo* that there are reasonable inferences that favor First Choice and Atlantic alike, when the allegations in the underlying petition "lend themselves to multiple reasonable inferences, [the court] cannot determine, based solely on the pleadings, whether there is a potentially covered claim." *Star-Tex*, 553 Fed. Appx. at 370. Accordingly, the court may look to extrinsic evidence to determine whether PrimeLending was seeking property damage caused by an occurrence. *See id.* at 371-73.

Although First Choice maintains that the court should look to extrinsic evidence, it submits no evidence for the court's consideration. First Choice only contends that

> Atlantic could have looked to extrinsic evidence to determine whether such physical injury to tangible property occurred instead of merely concluding that it did not. . . . [I]f Atlantic had looked at readily available extrinsic evidence, it would have discovered that Choice's alleged shoddy work resulted in physical injury to other tangible property.

D. Br. 9. This misunderstands the exception to the eight corners rule. The exception does not impose any duty on the insurer; rather, the insured bears the burden of establishing that the insurance policy covers the claim. *See, e.g., Star-Tex*, 553 Fed. Appx. at 369. Because the *insured* bears the burden, it is insufficient for First Choice to posit that extrinsic evidence existed that would have proved that property damage occurred, and that Atlantic could have found that evidence had it looked. At the summary judgment stage, First Choice must produce evidence that would enable a reasonable trier of fact to find that PrimeLending sued for property damage caused by an occurrence. Because First Choice has failed to meet this burden, the court grants Atlantic's motion for summary judgment on its declaratory judgment claim and holds that Atlantic had neither a duty to defend nor indemnify First Choice in the underlying lawsuit.[9]

IV

The court turns next to First Choice's counterclaims for violations of the DTPA and Chapter 541 of the Insurance Code, as to which Atlantic and First Choice cross-move for summary judgment. The court also addresses First Choice's third-party claims against Connect to the extent necessary to understand the court's disposition of these claims *infra*

---

[9]*See supra* note 4.

in § V.

A

First Choice alleges that Atlantic and Connect violated the DTPA by committing a false, misleading, or deceptive act or practice, in violation of DTPA § 17.46(b); failing to disclose material information, in violation of DTPA § 17.46(b)(24); committing an unconscionable act, in violation of DTPA § 17.50(a)(3); and committing an act or practice in violation of Chapter 541 of the Texas Insurance Code, which is, in turn, a violation of DTPA § 17.50(a)(4). First Choice also contends that Atlantic and Connect violated Chapter 541 of the Texas Insurance Code by failing to provide a prompt and reasonable explanation for the denial of First Choice's claim, in violation of Tex. Ins. Code Ann. § 541.060(a)(3) (West 2015); by misrepresenting the benefits or advantages promised by the Policies, in violation of Tex. Ins. Code Ann. § 541.051(1)(B) (West 2015); by failing to state a material fact so that other statements were rendered misleading, in violation of Tex. Ins. Code Ann. § 541.061(5) (West 2015); by refusing to pay the claim without conducting a reasonable investigation of the claim, in violation of Tex. Ins. Code Ann. § 541.060(a)(7) (West 2015); and by making a false, misleading, or deceptive act or practice, in violation of the DTPA § 17.46(b), which is, in turn, a violation of Tex. Ins. Code Ann. § 541.151(2) (West 2015).

B

The court considers together First Choice's counterclaims that Atlantic misrepresented the Policy as an adequate CGL policy that would "cover normal business operations for [First] Choice's remodeling business[,]" in violation of DTPA § 17.46(b) and Tex. Ins. Code

Ann. § 541.061. Am. Answer ¶ 32. First Choice alleges that Connect, acting on behalf of Atlantic, "(1) knew that numerous narrow policy definitions and/or exclusions . . . would allow Atlantic to refuse coverage for virtually any conceivable claim . . . [and] (2) knew that the type of work included in the 'Classification—Remodeling' endorsement presented to [First] Choice would lead [First] Choice to believe that such work in its normal business operations would be covered[.]" Am. Answer ¶ 34.

Under the DTPA and the Insurance Code, "[t]he general rule is that in the absence of an affirmative misrepresentation, a mistaken belief about the scope of coverage is not actionable under DTPA or the Insurance Code." *Manion v. Sec. Nat. Ins. Co.*, 2002 WL 34230861, at *2 (Tex. App. Aug 15, 2002, no pet.) (unpublished opinion). "General claims by the insurer of the adequacy or sufficiency of coverage, for instance, are not generally actionable[.]" *State Farm Cnty. Mut. Ins. Co. v. Moran*, 809 S.W.2d 613, 621 (Tex. App. 1991, writ denied). But where an insurer or agent does more than represent that a policy provides full coverage—such as representing that coverage exists in a specific situation—the insurer or agent may be liable for a misrepresentation under the DTPA. *Wyly v. Integrity Ins. Solutions*, 502 S.W.3d 901, 908 (Tex. App. 2016, no pet.) (holding that trial court erred finding no misrepresentation where insurer assured insured that policy provided coverage from "loading to unloading" (emphasis omitted)).

First Choice has neither alleged nor submitted any summary judgment evidence that would enable a reasonable trier of fact to find that Connect went beyond a general claim of the sufficiency of coverage. In its brief, First Choice only contends that Connect

"misrepresented that it was selling a general commercial liability policy for a remodeling contractor" when the Policy, in fact, was not. D. Br. 14. This certainly does not amount to a promise of coverage by *Atlantic* in a specific situation that could be considered an affirmative misrepresentation. *See Wyly*, 502 S.W.3d at 908. The court therefore grants Atlantic's motion for summary judgment as to First Choice's misrepresentation claims against Atlantic under both the DTPA and the Insurance Code.

C

First Choice also contends that Connect failed to disclose that "policy coverages, exclusions, exceptions to exclusions, definitions, and other terms made the policy completely worthless to [First] Choice because it did not cover [First] Choice's work as a remodeling contractor," thereby violating DTPA § 17.46(b)(24) and Tex. Ins. Code Ann. § 541.061(5). D. Br. 16. But First Choice has not adduced evidence that would enable a reasonable trier of fact to find, nor has it plausibly pleaded, that the Policy was "completely worthless." The Policy *could* trigger a duty to defend in suits arising from First Choice's work as a remodeling contractor if, for example, a First Choice employee accidentally caused physical injury to tangible property being remodeled. Indeed, Texas courts recognize that a duty to defend may arise in similar situations. *See, e.g., Lamar Homes*, 242 S.W.3d at 10 (holding that duty to defend was triggered in context of defective renovation when petition contained factual allegation of property damage and occurrence). First Choice has not presented a genuine issue of material fact that is sufficient to withstand summary judgment, and it has not plausibly pleaded that the Policy was "completely worthless." Accordingly, the court

grants Atlantic's summary judgment motions as to these two counterclaims.

D

First Choice alleges that Atlantic violated the DTPA by advertising that the Policy was adequate for First Choice's normal business operations and then selling an inadequate policy. Consistent with its conclusion that First Choice has neither plausibly pleaded nor submitted sufficient evidence to enable a reasonable trier of fact to find that the Policy was "completely worthless," *see supra* § IV(C), the court also concludes that a reasonable trier of fact could not find that Atlantic falsely advertised an inadequate policy as an adequate one.

E

First Choice also alleges that Atlantic's conduct was unconscionable under the DTPA. "Unconscionable conduct exists where an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016) (quoting Tex. Bus. & Com. Code Ann. § 17.45(5)) (internal quotation marks omitted).

First Choice's sole argument for unconscionability is the same as it has relied on for its other DTPA counterclaims: "Connect, on behalf of Atlantic, sold to Choice a CGL policy for the normal business operations of a remodeling contractor that does not cover the remodeling contractor's work. This is clearly an unconscionable act under the DTPA as coverage under such policy is illusory." D. Br. 15. For the same reasons as discussed above, *see, e.g., supra* § IV(C), the court concludes that a reasonable trier of fact could not find in First Choice's favor and thus grants summary judgment on its unconscionability

counterclaims.

F

First Choice alleges that Atlantic violated the Insurance Code by failing to promptly give First Choice a reasonable explanation for the denial of its claim, in violation of § 541.060(a)(3), and by refusing to pay the claim without conducting a reasonable investigation, in violation of § 541.060(a)(7). For First Choice to have an actionable claim for a violation of § 541.060, it must present evidence that it suffered "actual damages" caused by Atlantic. *Id.* at § 541.151. In its brief in response to Atlantic's motion for summary judgment, First Choice contends that "[i]f the Court finds that Atlantic wrongfully denied [First] Choice's claim, Atlantic's failure to conduct a reasonable investigation and to give a reasonable explanation for the denial will have caused [First] Choice actual damages as policy benefits wrongfully withheld are considered actual damages[.]" D. Br. 19. First Choice neither alleges nor submits evidence to show that it suffered any other damages, and the court has not found that Atlantic wrongfully denied the claim. Accordingly, a reasonable trier of fact could not find that First Choice suffered damages, as required by § 541.151, and Atlantic is entitled to summary judgment.[10]

[10]First Choice seeks leave to file a motion to compel related to its claim that Atlantic failed to promptly deny coverage under the Policy, in violation of the Texas Insurance Code. Given the basis on which the court is dismissing this claim, and considering the discovery that First Choice seeks via its proposed motion to compel, the court denies the motion for leave as moot.

G

Having concluded that First Choice has not submitted any evidence to support a substantive claim under either the DTPA or the Insurance Code, the court grants Atlantic's motion for summary judgment dismissing First Choice's counterclaims under DTPA § 17.50(a)(4) and Insurance Code § 541.151(2), which each premise liability under their respective statutes on a violation of the other statute. Atlantic's motion for summary judgment is therefore granted as to all of First Choice's counterclaims.

V

The court now turns to Connect's motion to dismiss First Choice's third-party claims.[11] First Choice's third-party claims against Connect, and the related pleadings, are identical to the counterclaims that First Choice asserts against Atlantic and that the court has addressed *supra* at § IV.[12] The court assumes *arguendo* that, where applicable, First Choice's pleadings meet Rule 9(b)'s heightened standard for pleading claims sounding in fraud.

---

[11]In deciding this Rule 12(b)(6) motion, the court construes First Choice's amended third-party complaint in the light most favorable to it, accepts all well-pleaded factual allegations, and draws all reasonable inferences in its favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[12]First Choice asserts the third-party claims against Connect together with its counterclaims against Atlantic, so that the pleadings for the respective claims are identical.

Each of First Choice's substantive DTPA claims against Connect, as well as its claims for misrepresentation and omission under the Insurance Code, relies on the necessary premise that Connect and Atlantic represented that the Policy was sufficient for First Choice's business when, in reality, it was not. *See supra* § IV(B)-(E). Because the court has concluded above that First Choice has alleged neither a misrepresentation nor an insufficiency in the Policy that is sufficient to trigger liability under the DTPA or the Insurance Code, the Court dismisses these claims against Connect under Rule 12(b)(6) for failure to plead a plausible claim.

The court also dismisses First Choice's claims against Connect under §§ 541.060(a)(3) and (a)(7) of the Insurance Code because First Choice has failed to allege a plausible claim for damages. *See supra* § IV(F).

And the court dismisses First Choice's claims against Connect under DTPA § 17.50(a)(4) and Insurance Code § 541.151(2) because First Choice has failed to allege a plausible claim for a substantive violation of the DTPA or the Insurance Code. *See supra* § IV(G).

Although the court is dismissing First Choice's third-party action against Connect, it will permit First Choice to replead. *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling

or unable to amend in a manner that will avoid dismissal).[13] Because there is no indication that First Choice cannot, or is unwilling to, cure the pleading defects the court has identified, the court grants it 28 days from the date this memorandum opinion and order is filed to file a second amended third-party complaint.

* * *

For the foregoing reasons, the court grants Atlantic's motion for summary judgment; denies Atlantic's motion to dismiss without prejudice as moot; denies Atlantic's two motions to strike as moot; denies First Choice's motion for partial summary judgment; denies First Choice's motions to strike, for leave to file a surreply brief, and for leave to file a motion to compel as moot; and grants Connect's motion to dismiss, but also grants First Choice leave to replead. The court enters a final Rule 54(b) judgment in favor of Atlantic today.

**SO ORDERED**.

March 10, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

[13]Although this is the first motion to dismiss that the court has decided concerning First Choice's third-party action against Connect, First Choice's initial third-party claims were identical to the counterclaims that the court addressed in *Atlantic I*. Accordingly, the court considers this memorandum opinion and order to be the second that alerts First Choice to the deficiencies in its pleadings, and First Choice's second opportunity to cure deficiencies that the court has identified.